Neil R. KOHER, Sr., and Sandra Koher, Appellants–Plaintiffs,

v.

Gary DIAL, Sheriff of Noble County, Indiana, Noble County Indiana Sheriff's Department, and Noble County, Indiana, Appellees–Defendants.

No. 02A04–9502–CV–65.

Court of Appeals of Indiana.

July 26, 1995.

Rehearing Denied Sept. 12, 1995.

Transfer Denied Jan. 5, 1996.

Larry J. Burke, Fort Wayne, for appellants.

Robert T. Keen, Jr., Larry L. Barnard, Miller Carson Boxberger & Murphy, Fort Wayne, for appellees.

## OPINION

RILEY, Judge.

In a personal injury action brought by Plaintiffs–Appellants Neil R. Koher, Sr. and Sandra Koher, the trial court granted summary judgment in favor of Defendants–Appellees, Gary Dial, Sheriff of Noble County, Indiana; Noble County, Indiana Sheriff's Department; and Noble County, Indiana (collectively referred to as the "County"). Neil and Sandra Koher bring this appeal and raise one restated issue for our review: Did the trial court err in determining that the County did not owe a private duty to Neil Koher?

We reverse and remand.

### FACTS

A little before 2:00 p.m. on August 24, 1991, Neil Koher experienced chest pains while mowing the lawn. Neil had a history

of heart problems beginning in 1989, and thus, upon feeling pain, took two nitroglycerin tablets which his physician had previously prescribed. The medicine did not relieve the pain.

Sandra Koher sent for her sister, Cynthia White, a nurse, who lived across the street from the Kohers. Cynthia and her husband, Roger White, arrived at about 2:00 p.m. Twice, Roger attempted without success to telephone the Noble County Sheriff's Department. Sandra then dialed 911, but received no answer. Sandra redialed 911 and was connected with the 911 dispatcher. Sandra told the dispatcher that her husband was having a heart attack, that he was in and out of consciousness, and that he needed an ambulance immediately. She gave directions to her house and told the dispatcher that someone would be in front of the house to direct the ambulance. The 911 dispatcher promised Sandra that an ambulance would be dispatched immediately. Sandra's call was received by the 911 dispatcher at 2:10 p.m.

Sandra posted individuals at the roadside to direct the ambulance when it arrived. Sandra, Cynthia and Neil waited. Relying on the promise of the dispatcher, they did not transport Neil to the hospital themselves, nor did they make additional attempts to seek ambulance services directly.

As a member of the Noble County Volunteer Fire Department, Roger carries a pager with which he can monitor the dispatch of the Noble County Emergency Medical Squad (EMS). After Sandra called 911, Roger did not hear a dispatch of an ambulance to the Koher home on his pager.

At 2:17 p.m., Cynthia telephoned the Noble Township Fire Department at Wolf Lake where the Wolf Lake Branch of the EMS was holding a meeting at the Fire Department.[1] An ambulance was immediately dispatched and arrived at the Kohers home at 2:18 p.m.

At all times relevant to this action, the County was in charge of and operated the 911 Emergency telephone number and was responsible for dispatching emergency medical service in Noble County.[2] Three weeks later, Sandra spoke with Chief Deputy Sheriff Harlan Miller of the Noble County Sheriff's Officer who told her that the reason his department failed to respond to the telephone call and failed to dispatch an ambulance promptly as requested and promised was that on August 24, the sheriff's department was having its annual picnic, and an officer, unfamiliar with the "equipment was brought in to operate the dispatching of the emergency services and that said operator was unable to properly and efficiently operate the equipment." (R. at 88).

Neil and Sandra Koher (collectively referred to as "Koher") initiated an action alleging that the County had negligently failed to promptly dispatch an ambulance to the Kohers' residence in response to a telephone call to the 911 emergency service. As a result of this delay, Neil was deprived of the prompt administration of oxygen and medication, and suffered permanent damage to his heart. His quality of life has been greatly diminished.

The County filed a motion for summary judgment on the grounds that it did not have any special relationship with Koher such as to give rise to a private duty. (R. at 61). After a hearing, the trial court granted the motion and entered judgment for the County, citing to *Lewis v. City of Indianapolis* (1990), Ind.App., 554 N.E.2d 13, *trans. denied* (summary judgment granted to municipality because there was no evidence showing that plaintiff had a special relationship with municipality or its services giving rise to a special, individualized duty on municipality's part toward plaintiff).

Koher appeals.

---

1. The precise times of the phone calls made by Sandra and Cynthia are established by the records of the Noble County Sheriff's Department and the Noble County EMS. Sandra, Cynthia, and Roger testified in their deposition to different times.

2. IND.CODE 34-4-16.5-3 (1993) provides that a governmental unit is not liable for its acts in connection with the operation and use of "an enhanced emergency communication system." During the relevant period of time, Noble County did not have an enhanced emergency communication system.

## DISCUSSION

In this appeal we address the narrow issue of whether Koher had a special relationship with the County giving rise to a special, individualized duty. We are guided in our analysis by two recent cases discussing this issue coming from our supreme court and this court, *Mullin v. Municipal City of South Bend* (1994), Ind., 639 N.E.2d 278; *City of Gary v. Odie* (1994), Ind.App., 638 N.E.2d 1326.

■ At the outset, we note that the County, and not Koher, designated the issues raised in the summary judgment motion. In so doing, the single contention placed before Koher was whether the County owed a private duty to Koher. In its reply memorandum in support of its summary judgment motion, the County argued that Koher failed to show any causal connection between the County's failure to dispatch an ambulance and any injuries suffered by Neil. However, the issue before the trial court in its original determination and before us on review is limited to that raised initially in the motion. *Kennedy v. Murphy* (1994), Ind.App., 640 N.E.2d 764, 766–67. Thus, any issue beyond that raised in the County's motion for summary judgment is not properly before us.

■ The purpose of summary judgment is to terminate litigation about which there can be no factual disputes, *Fifth Third Bank v. Bentonville Farm Supply* (1994), Ind.App., 629 N.E.2d 1246, 1248, *reh'g denied, trans. denied,* and it is only appropriate where the moving party demonstrates by properly designated evidentiary matter that no genuine issue of material fact exists and that the party is entitled to judgment as a matter of law. Ind.Trial Rule 56(E). In our review of an entry of summary judgment, we consider the same issues and conduct the same inquiry as the trial court. *O'Donnell v. American Employers Ins.* (1993), Ind.App., 622 N.E.2d 570, 572, *reh'g denied, trans. denied.* All evidence must be construed favorably to the nonmoving party, and all doubts as to the existence of a material issue must be resolved against the moving party. *J.A.W. v. Loretta Roberts* (1994), Ind.App., 627 N.E.2d 802, 807. The existence of a duty is a question of law which is properly decided by the trial court. *Mullin,* 639 N.E.2d at 283.

■ The County asserts that Koher was required to establish that the County owed him a private duty in this action. Standing alone, a governmental entity's dispatch of emergency services does not create a private duty. Thus, in order to prevail, Koher had to establish some special relationship between himself and the County which created a private duty. *See Odie,* 638 N.E.2d at 1330–34.

In *Mullin,* 639 N.E.2d 278, our supreme court held that when a "governmental entity is aware of the plight of a particular individual and leads that person to believe that governmental rescue services will be used, and the individual detrimentally relies on that promise, it would be unfair to leave that individual worse off than if the individual had not sought assistance from the government at all." *Id.* at 285. The court delineated the following elements for imposition of a private duty on governmental defendants:

(1) an explicit assurance by the municipality, through promises or actions, that it would act on behalf of the injured party;

(2) knowledge on the part of the municipality that inaction could lead to harm; and

(3) justifiable and detrimental reliance by the injured party on the municipality's affirmative undertaking.

*Id.* at 284.

■ A review of the evidence most favorable to Koher reveals that Sandra spoke to the 911 dispatcher. She told the dispatcher that Neil was having a heart attack, that he was in and out of consciousness, and that he needed an ambulance immediately. This is sufficient to establish knowledge on the part of the municipality that inaction could lead to harm. The dispatcher assured Sandra that an ambulance would be dispatched immediately. This is sufficient to establish an explicit assurance by the municipality that it would act on behalf of the injured party. There is also evidence of detrimental reliance. After Sandra spoke to the dispatcher, she posted individuals at roadside to direct the ambulance to her house. She waited,

and relying on the promise of the dispatcher, did not transport Neil to the hospital herself, nor did she seek ambulance services directly. During the delay, Neil was deprived of oxygen and medication and suffered permanent damage to his heart and his quality of life has been greatly diminished.[3] Under these circumstances, Koher established the existence of a private duty owned to him by the County.

The County argues that Koher was not lulled into inaction by the promise of an ambulance because he was aware, at all times, that no ambulance had been dispatched. This argument is without merit. The mere fact that Roger could monitor dispatches of the Noble County EMS on his pager does not show that Koher did not rely on the promise of the dispatcher. In fact, the relatively short amount of time between when Sandra contacted the dispatcher and when Cynthia contacted the Fire Department directly is probably due in large part to the family's ability to monitor ambulance dispatches. The short time span between phone calls does not diminish Koher's reliance on the dispatcher's assurance that he would send an ambulance out immediately.

The trial court erred in finding that the County did not owe a private duty to Koher. We reverse and remand this action to the trial court for proceedings in accordance with this decision.

CHEZEM, J., concurs in result.

STATON, J., concurs.

**3.** The County argues that Koher was required to show a causal relationship between the delay in the dispatch of the ambulance and the injury to Neil. Koher pleaded that he was deprived of oxygen and medication and suffered permanent damage to his heart due to the delay. This fact was not disputed in the County's motion or memorandum for summary judgment, and thus is an undisputed fact before us.